IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

W. EDWARD BRANTLEY and
ROLAND NORRIS, II,

       Plaintiffs,

v.                CIVIL ACTION NO.  5:08-cv-00935

JACK L. WILLIAMS,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

   On July 29, 2008, the Court held a preliminary injunction hearing in the instant case. At that hearing, the Court raised concerns regarding the involuntary petition for bankruptcy filed against F&N Construction, Inc. (F&N), Case No. 5:08-bk-50196 (Bankr. S.D. W. Va.), and the potential applicability to this case and some of the issues raised herein of the automatic stay arising from the involuntary petition. The Court entered an Order [Docket 10] on July 30, 2008, directing the parties to file written memoranda addressing the Court's concerns or, in the alternative, to seek an Order from the bankruptcy court stating that the stay is inapplicable to this case or granting relief from the stay. On August 8, 2008, both Plaintiffs and Defendant timely filed their responsive memoranda [Dockets 11 and 12]. [1]

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

   On March 12, 2008, Plaintiffs and Defendant entered into an Agreement for the Purchase and Sale of Shares of F&N Construction, Inc. and BTU Sales, Inc. (the Agreement), whereby Plaintiffs

---

[1] To date, the Court is not aware of any proceedings in the bankruptcy court.

agreed to purchase from Defendant all outstanding shares of F&N and BTU Sales, Inc. (BTU) for the price of $6,821,000.00.  Pursuant to the Agreement, Plaintiffs paid $500,000.00 up front and agreed to pay the remaining $6,321,000.00 in sixty consecutive monthly installments, beginning on June 15, 2008.  As security for the sale, Defendant was given a lien on 88.5% of the transferred stock.  Also pursuant to the Agreement, Plaintiffs agreed to loan F&N $287,000 to purchase a reclamation bond for a parcel of property owned by F&N, to pay off F&N's creditors, and to protect and hold harmless Defendant, who apparently personally guaranteed at least some of the debts, from collection efforts of those creditors.  Plaintiffs also contracted with Defendant to perform consulting services for F&N.  In the event that Plaintiffs defaulted on their obligations, the Agreement provided that Defendant could repay the $287,000 loan and the aggregate amount paid as of the date of default, recoup any unencumbered shares of stock, and foreclose on any shares subject to the lien.

On June 17, 2008, Defendant sent Plaintiffs a Notice of Right to Cure Default (Notice) [Docket 6 ex. C].  In the Notice, Defendant alleged that Plaintiffs: 1) failed to make the required monthly payment on June 15, 2008; 2) failed to pay the debts and obligations of F&N and to reimburse Defendant for his payments on those debts and obligations as required by Section 1.6 of the Agreement; and 3) failed to make payments under the consulting agreement as required by Section 1.7 of the Agreement.  The Notice further informed Plaintiffs that if the default was not cured within thirty days, Defendant would foreclose on the remaining stock and sell it by private sale on July 22, 2008.

On July 15, 2008, Plaintiffs wired $143,420.00 to a bank in West Virginia, which issued checks to Defendant and A&E Construction, Inc. (A&E), Defendant's consulting company.  Plaintiffs also represented to Defendant that they were involved in negotiations to pay off 75% of

the outstanding debt, that they had secured financing for the short-term operations of F&N, and that they were in the process of obtaining financing for the long-term operations of F&N. (Docket 6 ex. 1.) Defendant, however, refused the payment and informed Plaintiffs that he intended to proceed with the sale on July 22, 2008. (*Id.*) On July 21, 2008, Plaintiffs filed a Complaint [Docket 1] in this Court seeking a declaratory judgment of the rights and obligations of the parties to the Agreement, injunctive relief to prevent Defendant from selling the stock, and monetary damages. Also on July 21, 2008, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction [Docket 2] seeking to immediately enjoin the sale of stock pending the outcome of the instant case. The Court then held a preliminary injunction hearing on July 29, 2008, at which it raised the issue of the automatic stay. The issue of the automatic stay has been fully briefed and the issue is now ripe for the Court's consideration.

## II.  APPLICABLE LAW

The filing of an involuntary petition for bankruptcy

> operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, [or] any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a). The operation of the stay is automatic, *Tidewater Fin. Co. v. Williams*, 398 F.3d 249, 251 (4th Cir. 2007), and is triggered when the involuntary petition is filed, *E.E.O.C. v. McLean Trucking Co.*, 834 F.2d 398, 399 (4th Cir. 1987). The stay protects "only the debtor, property of the debtor or property of the estate[,]" *In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991) (citing *In re Casgul of Nev., Inc.*, 22 B.R. 65, 66 (B.A.P. 9th Cir. 1982)), not non-debtors and their property, *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121-22 (4th Cir.

1988). It is well-established that a corporation's stock is not property of that corporation. *See In re Am. Athlete Co.*, 27 B.R. 38, 40 (Bankr. M.D. Pa. 1983) (citing *First Sw. Corp. v. Tex. Consumer Fin. Corp.*, 480 F.2d 1261, 1266 (5th Cir. 1973)).

The Court is aware of a number of cases that decline to apply the automatic stay to transfers of stock. For example, in *Advanced Ribbons*, 125 B.R. 259, a bankruptcy appeals panel for the Ninth Circuit held that the automatic stay did not apply to void a foreclosure sale of a corporate debtor's stock that was pledged by the corporation's sole shareholder to guarantee corporate debt. Similarly, in *Am. Athlete*, 27 B.R. 38, the Bankruptcy Court for the Middle District of Pennsylvania declined to enjoin a foreclosure sale of stock under 11 U.S.C. § 362(a) based on the Fifth Circuit's holding in *First Sw. Corp.* that stock is not property of the corporation. Finally, in *In re Conn. Aerosols, Inc.*, No. 5-82-00338, 1982 Bankr. LEXIS 3083 (Bankr. D. Conn. Oct. 25, 1982), the court found that the automatic stay did not apply to an action to recover shares of the debtor's stock from an escrow agent after the debtor defaulted on obligations regarding a consulting agreement.

There exists an exception, however, to the general rule that the automatic stay extends only to the debtor and the debtor's property and estate. In particular, the Fourth Circuit has held that a bankruptcy stay may apply to non-bankrupt parties in "unusual circumstances." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). "[S]omething more than the mere fact that one of the parties to the lawsuit [is in bankruptcy proceedings] must be shown in order that proceedings be stayed against non-bankrupt parties." *Id.* (citations and internal quotation marks omitted). In *A.H. Robins*, the Fourth Circuit upheld a district court order staying suits against a corporate debtor's co-defendants based on those unusual circumstances in part because failure to stay the cases may have

had an adverse impact on the debtor's ability to carry out a reorganization plan.[2] *Id.* at 1005. In so doing, the Fourth Circuit relied on language in *Royal Trucks & Trailer v. Armadors Meritina Salvadoreana*, 10 B.R. 488, 491 (N.D. Ill. 1981), that left the door open for courts in exercising their discretion to apply the automatic stay in a broad fashion to "unusual circumstances." Although the unusual circumstances exception was rejected by the Ninth Circuit in *Advanced Ribbons* when examining the issue of stock transfers, the concept has been recognized as having continuing validity in this district. *See Holland v. High Power Energy*, 248 B.R. 53 (S.D. W. Va. 2008) (Copenhaver, J.) (declining to find unusual circumstances where defendant and debtor were related persons under Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701-9722).

### III. ANALYSIS

It is well-settled that, because the debtor in the involuntary bankruptcy proceeding is not a defendant in this action, and because F&N's stock is not property of the corporation, § 362(a) generally does not operate as an automatic stay in the instant proceeding. Thus, the Court may only stay the instant action if it finds that unusual circumstances are present which necessitate such a stay. Although the courts in *Advanced Ribbons* and *Conn. Aerosols* found that the automatic stay does not apply to a foreclosure sale of stock, the Court is not persuaded by those holdings. In *Advanced Ribbons,* the Ninth Circuit declined to adopt the unusual circumstances exception and therefore had no occasion to consider or apply it. *Advanced Ribbons*, 125 B.R. at 266 ("In [*In re Lockard*, 884 F.2d 1171 (9th Cir. 1989)], the Ninth Circuit declined to adopt the unusual circumstances rule of

---

[2] The Court also noted that unusual circumstances may arise "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins*, 788 F.2d at 999.

*A.H. Robins*."). Neither did the court in *Conn. Aerosols*, 1983 Bankr. LEXIS 3083, which is an unpublished case, have the option of following *A.H. Robins* because *A.H. Robins* was decided three years after *Conn. Aerosols*. Further, both of those cases are distinguishable from the case at bar. Although all three cases involve an action to foreclose on stock pursuant to a pledge agreement, neither *Advanced Ribbons* nor *Conn. Aerosols* involved the same type of specific contractual arrangements as the Agreement in the instant case. For example, Section 1.6 of the Agreement here requires Plaintiffs to negotiate with and pay off creditors, and to protect and hold harmless Defendant from certain acts of those creditors. Additionally, Section 1.7 sets forth a detailed consulting agreement whereby Defendant agreed to provide certain business services to the company which would clearly impact the operations and financial state of the company. Neither *Advanced Ribbons* nor *Conn. Aerosols* involved such a contractual relationship.

Accordingly, the Court **FINDS** that this case presents the type of unusual circumstances allowed for by the Fourth Circuit in *A.H. Robins*. The case implicates more than the mere transfer of stock between shareholders. It involves the ownership and oversight of the putative debtor company. For example, Plaintiffs are required by the Agreement to negotiate with and pay off creditors. Thus, which party has control of the company may impact which creditors are paid, when and in what order – all matters obviously at issue in the bankruptcy court. Further, Plaintiffs have established contractual relationships with other parties "associated with the operation of the company to extract [] coal[]." (Docket 11 at 8.) Those relationships have been placed in jeopardy by the issues raised in this case. To the extent that this dispute has had an impact on the operations of the company, that impact may have a direct effect on the revenue generated by the company. The

company's revenue stream will, in turn, affect the company's ability to retire debt as contemplated by the Agreement.

Plaintiffs have also represented to the Court that they are "in the process of obtaining financing from third party investors" contingent upon Plaintiff's continued ownership and management of the company that may impact F&N's continued financial viability. (*Id.* at 6.) Further, Plaintiffs have represented that they intend to convert the involuntary Chapter 7 proceeding into a Chapter 11 proceeding and emerge with a plan for reorganization. (*Id.*) Plaintiffs represent that they are negotiating with a third party to "provide debtor-in-possession financing to pay the trade suppliers, professional services and employees" of F&N until F&N emerges from bankruptcy in exchange for an ownership interest in the reorganized company. (*Id.* at 7.) Plaintiffs also contend that some creditors "are willing to work with management" to help F&N reorganize. (*Id.*)

Finally, as this litigation is ultimately about the control of the corporation, control of the corporation's, and therefore the bankruptcy estate's, property is necessarily implicated. *See* 11 U.S.C. 362(a). As compared to the District Court, the Bankruptcy Court is in the better position to resolve this important threshold issue.

Thus, the outcome of this proceeding goes to the very essence of F&N and any reorganization plan contemplated in the bankruptcy proceeding will be greatly affected by a determination of the contractual obligations regarding the debtor's finances, debts, operation and ongoing viability, as well as which party is entitled to control of the stock. Accordingly, the Court **FINDS** that unusual circumstances exist in this case and that the automatic stay under 11 U.S.C. § 362(a) is applicable to the instant case and proceedings.

*IV. CONCLUSION*

For the reasons stated above, the case is **STAYED** pending the outcome of F&N's bankruptcy proceeding.[3] The hearing currently set for August 21, 2008, is hereby **VACATED**. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

    ENTER:    August 18, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[3] To the extent that Defendant urges that the case be referred to the bankruptcy court for disposition, the Court declines to do so at this time. This Court's finding that the automatic stay applies will necessarily shift the proceedings to bankruptcy court in any event.

    The Court notes that Plaintiffs have recently filed a motion, [Docket 18], for an (even more) expedited hearing and other relief, on the grounds, *inter alia*, that Defendant has attempted to foreclose on the stock on which he has a lien. This action, of court, complicates this litigation, and its validity will be but one issue before the bankruptcy court.